IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHAD V. DOUGLAS                                                                                           PLAINTIFF

         v.                              Civil No. 11-3030

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      **Factual and Procedural Background**

      Plaintiff, Chad V. Douglas, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for child's insurance benefits, disability insurance benefits, ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

      Plaintiff protectively filed his applications on November 3, 2008, alleging a disability onset date of August 1, 2007, due to mood swings, depression, a learning disability, attention-deficit/hyperactivity disorder ("ADHD"), back pain, and lung problems. Tr. 16, 195, 202, 262. Plaintiff received SSI as a child, but his benefits were discontinued when he reached the age of eighteen. Tr. 16. On the application date, Plaintiff was twenty-one years old with a limited education and some special education courses. Tr. 18, 23, 61, 199, 262.

      Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 86-95, 98-104. At Plaintiff's request, an administrative hearing was held on March 30, 2010. Tr. 54-79. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on June 14, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 13-

25. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 16, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II. Medical History

Plaintiff has a history of depression and behavioral problems. Tr. 290-331. As a child, Plaintiff received inpatient treatment at various facilities, including BridgeWay, Rivendell Behavioral Health Services, and Youth Home. Tr. 319-323, 387-394, 396-452, 458-487.

### A. Ozark Counseling Services

In March 2005, Plaintiff presented to Ozark Counseling Services after he was charged with sexual assault. Tr. 290-316, 502-511. He reported a history of depression, anxiety, aggression, impulsivity, sleep problems, and disruptive and self-injurious behavior. Tr. 297-306. On examination, Plaintiff's mood was euthymic and his affect was flat and constricted. Tr. 303. Thought processes were logical and concrete. Tr. 303. Plaintiff's behavior was cooperative, but he displayed loss of interest. Tr. 303. Insight was good, but judgment was poor at times due to impulsivity. Tr. 303. Plaintiff was diagnosed with adjustment disorder with mixed disturbance of emotion and conduct, post-traumatic stress disorder ("PTSD"), and sexual abuse of child, victim. Tr. 305. His GAF score was estimated at 52. Tr. 305. Plaintiff's treatment plan included psychiatric treatment, individual therapy, and behavioral supportive reinforcement. Tr. 305. In May 2005, Plaintiff was discharged for failure to follow through with treatment or attend his counseling sessions. Tr. 307-308.

On September 5, 2006, Plaintiff resumed counseling for court-ordered sex offender treatment. Tr. 309-316. Plaintiff was diagnosed with adjustment disorder with anxiety, sexual abuse

of child, perpetrator, and sexual abuse of child, victim. Tr. 313. He was given a GAF score of 55. Tr. 313. Plaintiff attended monthly treatment until February 2007, when he rejected further services. Tr. 315. He was discharged from therapy on November 26, 2007. Tr. 315. Plaintiff's final diagnosis was sexual abuse of a child, perpetrator, and sexual abuse of a child, victim, with a GAF score of 55. Tr. 315-316.

    B. <u>Baxter Regional Medical Center</u>

On July 2, 2008, Plaintiff presented to the emergency room at Baxter Regional Medical Center with complaints of chest pain due to chemical exposure at work. Tr. 345-347. On examination, Plaintiff's lungs were clear to auscultation bilaterally, with no crackles, wheezes, or rales. Tr. 345. Pulse oximetry was 97% on room air. Tr. 345. Pressure over the chest wall did not significantly produce pain. Tr. 345. Chest x-rays revealed interstitial disease and old granulomatous changes, but no focal infiltrates or effusions. Tr. 347. Melissa Quevillon, M.D., diagnosed Plaintiff with pleurisy. Tr. 345. She administered a shot of Toradol and instructed Plaintiff to take ibuprofen and Prednisone. Tr. 346.

    C. <u>Agency Consultants</u>

On December 2, 2008, Bill F. Payne, M.D., an agency consultant, determined that Plaintiff's physical impairments were non-severe. Tr. 348. On January 19, 2009, Dan Donahue, an agency consultant, completed a Mental Residual Functional Capacity ("RFC") assessment, in which he determined Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from

supervisors, and set realistic goals or make plans independently of others. Tr. 361-364. Dr. Donahue also completed a Psychiatric Review Technique Form ("PRTF"), in which he determined Plaintiff had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration. Tr. 365-378.

    D.  <u>Nancy A. Bunting, Ph.D,</u>

On January 2, 2009, Plaintiff saw Nancy A. Bunting, Ph.D., for a mental status evaluation. Tr. 353-360. Plaintiff reported a history of mood swings, temper problems, insomnia, poor energy, and difficulty staying focused. Tr. 353. Plaintiff denied a history of suicide attempts, but began cutting himself at the age of sixteen. Tr. 353. His first psychiatric hospitalization occurred at the age of seven or eight, when he was admitted to BridgeWay for a month due to anger and attempted suicide. Tr. 353. At the age of sixteen, Plaintiff was hospitalized at Rivendell for one week after an overdose on medication. Tr. 354. He reported two other hospitalizations at Rivendell. Tr. 354. Plaintiff's mother reported that Plaintiff spent three months at Youth Bridge and six months at Youth Home in Memphis. Tr. 354. He also received special education classes for reading and math and was expelled in seventh grade. Tr. 354. As a juvenile, Plaintiff was charged with assault with a deadly weapon and unauthorized use of a vehicle. Tr. 355. As an adult, Plaintiff was charged with public intoxication and nonpayment of fine. Tr. 355. At the time of evaluation, Plaintiff was not taking any prescription medication. Tr. 354.

On examination, Plaintiff was alert, attentive, and superficially cooperative. Tr. 355. Plaintiff's mood was irritable and his affect was controlled and within the normal range of appropriateness and expression. Tr. 356. Thought processes were logical, relevant, and goal-

directed. Tr. 356. Plaintiff denied current suicidal or homicidal ideation. Tr. 356. He denied having any memory problems. Tr. 357. Dr. Bunting diagnosed Plaintiff with antisocial personality disorder and estimated his GAF score at 49-59. Tr. 357. She found no difficulty in activities of daily living or Plaintiff's ability to communicate in a socially adequate manner. Tr. 358. Dr. Bunting noted that Plaintiff had some ability to cope with the typical cognitive demands of basic work-like tasks, deal with the public, handle work stress or changes, and follow instructions from supervisors since he held a job for three to four years. Tr. 358. She also noted that Plaintiff was able to attend and sustain concentration on basic tasks and complete tasks within an acceptable time frame. Tr. 358. Dr. Bunting noted that Plaintiff was guarded and reluctant and appeared to give only minimal effort. Tr. 358.

  E. <u>Vann Smith, Ph.D.</u>

On February 16, 2010, Plaintiff presented to Vann Smith, Ph.D., for a neuropsychological evaluation. Tr. 517-525. On examination, Plaintiff was oriented in all spheres. Tr. 518. Judgment, insight, and memory were intact. Tr. 518. Plaintiff's mood was mildly anxious and his affect was muted but flexible. Tr. 518. Narratives were logical and informative and Plaintiff voiced no suicidal or homicidal ideation, intent, plan, or impulse. Tr. 518. Thought processes were functional to abstract in quality. Tr. 518.

On the Wechsler Adult Intelligence Scale- Revised, Plaintiff received a full scale IQ score of 89, which was within the low average range of functioning. Tr. 520. After conducting numerous neuropsychological tests, Dr. Smith diagnosed Plaintiff with cognitive disorder, non-psychotic, secondary to general medical conditions, of moderate severity. Tr. 519-520. Dr. Smith estimated Plaintiff's GAF score at 35-40 and determined that he was disabled. Tr. 520-521. In a Mental RFC

Assessment, Dr. Smith determined Plaintiff was unable to meet competitive standards in six unskilled work-related categories, seriously limited, but not precluded, in seven unskilled work-related categories, and limited but satisfactory in three unskilled work-related categories. Tr. 523. He estimated that Plaintiff would miss more than four workdays per month. Tr. 524.

  F. <u>Michael Hodges, D.O.</u>

On March 16, 2010, Plaintiff was treated by Michael Hodges, D.O., for lumbar pain and depressed mood. Tr. 454-456. On examination, Dr. Hodges noted no spinal tenderness or misalignment. Tr. 456. He diagnosed Plaintiff with depression and backache, and prescribed Citalopram and Mobic. Tr. 456.

**III.** **<u>Applicable Law</u>**

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

The Commissioner applies a five-step sequential evaluation process to adult disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

With respect to Plaintiff's application for child's insurance benefits, he must establish disability prior to November 29, 2008, the date he attained age twenty-two. Tr. 16. With respect to his DIB claim, Plaintiff must establish disability prior to his date last insured, which is June 30, 2010. Tr. 16. Finally, with respect to his SSI claim, the relevant time period began on November 3, 2008, the date Plaintiff filed his SSI application. *See* 20 C.F.R. § 416.335 (SSI benefits are not payable prior to the application date).

**IV.    ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since August 1, 2007, the alleged onset date. Tr. 18. At step two, the ALJ found Plaintiff suffered from personality disorder, which was considered a severe impairment under the Act. Tr. 19. At step three, in regard to Plaintiff's SSI and DIB claims, the ALJ determined Plaintiff did not

have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19-20. In regard to Plaintiff's childhood insurance benefits claim, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment prior to attaining the age of twenty-two. Tr. 19-20.

At step four, the ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required, and supervision is simple, direct, and concrete. Tr. 20-23. With these limitations, the ALJ found Plaintiff could not perform his past relevant work. Tr. 23. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Accordingly, the ALJ determined Plaintiff was not under a disability from August 1, 2007, the alleged onset date, through June 14, 2010, the date of the decision. Tr. 24-25. Regarding Plaintiff's childhood insurance benefits claim, the ALJ found Plaintiff was not under a disability at any time prior to November 29, 2008, the date he attained the age of twenty-two. Tr. 24.

## V.     Discussion

As a preliminary matter, the court notes the Commissioner's objection to Plaintiff's thirty-one-page appeal brief. *See* Def.'s Br. 1. The text-only scheduling order entered on August 22, 2011, imposes a twenty-page limit on appeal briefs and states that "[a]ny brief exceeding the page limitation imposed herein may be stricken from the record." In this instance, the court will consider

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as hand packager, of which there are 4,733 jobs regionally and 469,203 jobs nationally, poultry processing workers, of which there are 4,500 jobs regionally and 24,509 jobs nationally, and commercial housekeeping, of which there are 941 jobs regionally and 101,765 jobs nationally. Tr. 23-24, 285-289.

Plaintiff's thirty-one-page appeal brief. In the future, however, Plaintiff's counsel must request leave for additional pages. Failure to do so will result in striking any additional pages above the twenty-page limit.

On appeal, Plaintiff contends the ALJ erred by: (A) failing to find his PTSD, learning disability, and cognitive dysfunction to be severe impairments; (B) finding his combination of impairments did not meet or equal a listing; (C) making an insufficient credibility determination; and (D) improperly determining his RFC. *See* Pl.'s Br. 14-31. For the following reasons, the undersigned finds that substantial evidence supports the ALJ's decision.

A. Severe Impairments

Substantial evidence supports the ALJ's determination that Plaintiff's PTSD, learning disability, and cognitive dysfunction were non-severe. Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)(O'Connor, J., concurring)). The Eighth Circuit has stated that severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard. *Id.* at 708.

Plaintiff has not shown that his alleged PTSD, learning disability, and cognitive dysfunction significantly limit his work abilities. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (citing

*Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989)).  Plaintiff's medical records demonstrate that he was diagnosed with PTSD and a learning disability in mathematics as a child, during which time he received childhood SSI benefits.  Tr. 305, 387-391, 494.  None of Plaintiff's recent medical records reflect diagnoses of PTSD and a learning disability.  *See Pyland v. Apfel,* 149 F.3d 873, 877 (8th Cir. 1998) (evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition, but such evidence cannot serve as the only support for disability).  In March 2005, Plaintiff was diagnosed with PTSD while receiving treatment at Ozark Counseling Services.  Tr. 305.  However, subsequent records reflect diagnoses of sexual abuse of a child, perpetrator, and sexual abuse of a child, victim, with no mention of continuing PTSD-related difficulties.  Tr. 315-316.  Additionally, Dr. Bunting diagnosed Plaintiff with antisocial personality disorder, but noted no difficulties regarding PTSD or learning disabilities, and found that Plaintiff could cope with the typical cognitive demands of basic work-like tasks, attend and sustain concentration on basic tasks, and complete tasks within an acceptable time frame.  Tr. 357-358.  For these reasons, Plaintiff failed to demonstrate that his alleged PTSD and learning disability significantly limit his work abilities.  *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

On February 16, 2010, Dr. Smith diagnosed Plaintiff with cognitive dysfunction of moderate severity.  Tr. 519-520.  This examination was submitted to the ALJ on May 28, 2010, less than three weeks prior to the ALJ's June 14, 2010, decision.  Tr. 516.  Although it does not appear that the ALJ received these records, they were made a part of the administrative record, and the Appeals Council found no basis to review the ALJ's decision.  Tr. 516-535.  Moreover, Plaintiff did not allege cognitive dysfunction in his initial applications, nor was it discussed at the administrative hearing.

The administrative law judge is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1993) (quoting *Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir.1993)). In fact, Plaintiff's counsel made no mention of sending Plaintiff for a neuropsychological examination at the hearing, nor did he request any further consultative examinations. For these reasons, substantial evidence supports the ALJ's severity determination.

    B. <u>Listings</u>

Plaintiff argues that the ALJ erred at step three in failing to find that Plaintiff's combined impairments meet or equal child listings §§ 112.02, 112.04, and 112.11. *See* Pl.'s Br. 21-24. To be eligible for childhood insurance benefits, a claimant must be the unmarried child of an insured person who is entitled to old-age or disability benefits or who is deceased. 20 C.F.R. § 404.350(a). The claimant must also demonstrate, amongst other things, that he is under the age of eighteen or that he is eighteen years or older and had a disability that began before the age of twenty- two. *Id.* If a claimant is seeking child's insurance benefits based on disability before the age of twenty-two, as is the case here, the Commissioner makes a disability determination using the adult standard.[2] Thus, the child listings are not applicable in this case, and the ALJ properly applied the adult listings in his step-three determination.

Additionally, substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal a listed impairment using the adult standard. The ALJ is not required to explain why an impairment does not meet or equal one of the listed impairments as long as the overall conclusion is supported by the record. *Boettcher v. Astrue,* 652 F.3d 860, 863 (8th Cir. 2011) (citing *Pepper*

---

[2] The adult definition of disability is used for child's insurance benefits based on disability before the age of twenty-two. 20 C.F.R. § 404.1505(a).

*ex rel. Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003)). Here, the ALJ determined Plaintiff's impairments did not meet or equal the criteria of listing 12.08. Tr. 19. He considered the "B" criteria, but determined Plaintiff had mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and one to two episodes of decompensation, each of extended duration. Tr. 19-20. Both Dr. Donahue's PRTF and Dr. Bunting's findings support this conclusion. Tr. 356-358, 365-378. Accordingly, substantial evidence supports the ALJ's step-three determination.

    C. <u>Credibility</u>

Plaintiff alleges the ALJ improperly dismissed his subjective complaints. *See* Pl.'s Br. 24-26. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*,

361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered his subjective complaints and dismissed them for legally sufficient reasons. With regard to activities of daily living, the ALJ noted that Plaintiff was able to perform self care, drive, shop independently, and perform a number of household chores. Tr. 23; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). Despite allegations that he did not get along with others, Plaintiff testified that he meets friends and walks to Walmart two to three times per week. Tr. 70-71. The ALJ also noted that Plaintiff took no prescription medication until a few weeks prior to the administrative hearing. *See Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (claimant's failure to take prescription pain medication weighed against credibility). Moreover, Plaintiff did not consistently seek treatment for his allegedly disabling mental impairments. *Hutton,* 175 F.3d at 655.

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

  D. <u>RFC Determination</u>

Lastly, Plaintiff contends the ALJ did not properly account for his mental limitations in the RFC determination. *See* Pl.'s Br. 27-29. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20

C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

 Plaintiff argues that the ALJ should not have accorded significant weight to Dr. Bunting's opinion.  Dr. Bunting diagnosed Plaintiff with antisocial personality disorder and estimated his GAF score at 49-59.[3]  Tr. 357.  She found no difficulty in activities of daily living or Plaintiff's ability to communicate in a socially adequate manner.  Tr. 358.  Dr. Bunting noted that Plaintiff had some ability to cope with the typical cognitive demands of basic work-like tasks, deal with the public, handle work stress or changes, and follow instructions from supervisors since he held a job at a glass company for three to four years.  Tr. 358.  She also noted that Plaintiff was able to attend and sustain concentration on basic tasks and complete tasks within an acceptable time frame.  Tr. 358.

 The ALJ's RFC determination is supported by the medical evidence of record.  Discharge notes from Ozark Counseling Services reveal a final diagnosis of sexual abuse of a child, perpetrator and victim, and a GAF score of 55, which is consistent with the moderate limitations assessed by Dr. Bunting as well as the agency physicians.  Tr. 313, 353-364.  Notably, Plaintiff failed to maintain a consistent treatment pattern for his alleged mental impairments during the relevant time period.

---

  [3]  A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning.  A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

*Hutton,* 175 F.3d at 655. In September 2006, Plaintiff resumed treatment at Ozark Counseling Services due to court order. Tr. 309-316. Otherwise, Plaintiff received no ongoing mental health treatment after his alleged onset date of August 1, 2007. *Id*. For these reasons, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

## VI.    Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice. **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of May 2012.

                    */s/ J. Marschewski*
                    HONORABLE JAMES R. MARSCHEWSKI
                    CHIEF UNITED STATES MAGISTRATE JUDGE